IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| MICHELLE H., by her next friend Tamara Coppinger, AVA R., by her next friend Tamara Coppinger, ZAHARA L., by her next friend Deborah Wilson, SAMMY V., by his next friend Aleksandra Chauhan, ANDREW R., by his next friend Cheryl Kreider, MARCUS, ANNIE, CAMERON, SARA and ROGER B., by their next friend Margaret Wilson, and KYLE S., by his next friend Tamara Coppinger, Individually and on behalf of all other similarly situated children, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:15-cv-00134-RMG |
| | ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **DEFENDANT SUSAN ALFORD'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| NIKKI HALEY, in her official capacity as Governor of the State of South Carolina, and SUSAN ALFORD, in her official capacity as Acting State Director of the South Carolina Department of Social Services, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the

defendant, Susan Alford ("Defendant Alford"), in her official capacity as Acting State Director[1]

of the South Carolina Department of Social Services, hereby submits the following Memorandum

---

[1] Defendant Alford was confirmed as Director on February 12, 2015.

1

and authorities in support of her Motion to Dismiss.  The undisputed facts and legal conclusions establish that Defendant Alford is entitled to judgment as a matter of law and therefore, this Court should grant the Motion to Dismiss.

## BACKGROUND

This case is brought by Plaintiffs on behalf of eleven (11) minors in the custody of the South Carolina Department of Social Services ("DSS") alleging violations of these minors' substantive due process rights, as well as violations of the Early and Periodic Screening, Diagnosis and Treatment Program of the Federal Medicaid Act ("EPSDT") and of Title II of the Americans with Disabilities Act ("ADA").  Plaintiffs also allege that they are proper representatives of a class of individuals that includes "all children who are or will be involuntarily placed in foster care in the legal custody of DSS as a result of emergency protective custody (EPC) and/or a referral, report, suspicion, allegation and/or adjudication of abuse or neglect."  (Complaint, ¶ 125).  This Class is broken into three (3) additional subclasses.[2]  Id.  Plaintiffs seek injunctive relief against the Defendants in order to remedy these alleged violations.  For the reasons set forth below, Defendant Alford contends that the Complaint should be dismissed.

## STANDARD OF REVIEW

Plaintiffs' Complaint should be dismissed pursuant to the defendant's Eleventh Amendment immunity,[3] and Rules 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure.

---

[2] The Plaintiffs have not moved to certify the class and, as such, a determination of whether the Plaintiffs are able to maintain an action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure is not before the Court at this time.  The Defendants deny that such certification is proper under Rule 23, but do not address these allegations for the purposes of this Motion to Dismiss.

[3] As noted in Hutto v. S.C. Retirement Sys., 773 F.3d 536, 543 (4th Cir. 2014), the Supreme Court's pronouncements regarding the characterization of Eleventh Amendment immunity have been somewhat unclear.  See also, Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 ("we have made clear that the Constitution does not provide for federal jurisdiction over suits against

Sovereign immunity pursuant to the Eleventh Amendment must be asserted by a defendant because, unlike subject matter jurisdiction, it can be waived by a state. Hutto v. S.C. Retirement Sys., 773 F.3d 536, 543 (4th Cir. 2014). Furthermore, the defendant bears the burden of demonstrating the existence of this immunity. Id.

Rule 12(b)(1) authorizes dismissal where the court lacks subject matter jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. U.S., 945 F.2d 765, 768 (4th Cir. 1991). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Id. (citations omitted). The Court may dismiss an action at any time based on a lack of subject matter jurisdiction.

Defendant Alford also moves pursuant to Rule 12(b)(6) based upon Plaintiff's failure to state a claim upon which relief may be granted. In considering a Rule 12(b)(6) motion, the Court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). However, Plaintiffs must establish entitlement to relief with "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## ANALYSIS

---

nonconsenting states"); Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 389 (1998) (holding that the presence of a claim in a complaint that was prohibited by "the Eleventh Amendment . . . does not automatically destroy original jurisdiction" and Courts are not required to address sovereign immunity *sua sponte*). Nevertheless, in Hutto, the Fourth Circuit held that "as a practical matter" assertion of "sovereign immunity is akin to an affirmative defense." 773 F.3d at 543. Therefore, this defense has been set forth as a separate ground from the Defendant's subject matter jurisdiction claims.

Essentially, Plaintiffs seek to "fix" South Carolina's foster care system through federal court intervention.  According to Plaintiffs, the three root causes of the deficiencies in South Carolina's foster care system are:  (1) a shortage of foster care homes; (2) excessive caseloads; and (3) the failure to provide health care services to children in foster care.  Plaintiffs allege that these three deficiencies result in a myriad of harms to children in foster care.  Extraordinarily, Plaintiffs now look to the federal court to delve into, among other things, South Carolina's recruitment of foster homes, hiring and retention of case workers, limitations on case worker workloads, sibling visitation efforts, and the provision of medical care for children in foster care.

Over the last year, many individuals and groups, including the South Carolina Governor, the South Carolina General Assembly, the South Carolina Legislative Audit Council, the South Carolina Department of Social Services, and many other South Carolina stakeholders have spent considerable time and resources working to improve South Carolina's child welfare system.  Over the last month, the Governor and the General Assembly have nominated and confirmed new leadership for the Department. All of these groups have publicly stated their commitment to continuing this work until completion.  Plaintiffs now ask the federal court to weigh in on this ongoing South Carolina issue and essentially oversee this effort.  Even assuming these deficiencies exist, Plaintiffs' claims are nothing more than a veiled attempt at asking this Court to instruct the Governor and the Director how to manage the Department and to order the South Carolina General Assembly to allocate additional funds to the Department.

Of equal importance, each of the named Plaintiffs have an open, active case in the South Carolina family court with full jurisdiction to remedy as it sees fit any harms that may flow to a child as a result of any of the alleged deficiencies.  Plaintiffs also essentially ask this Court to manage the South Carolina family court's oversight of foster care.

4

For a number of reasons, this Court must refrain from inserting itself into this South Carolina state issue. Specifically, Plaintiffs' claims must be dismissed in this case because of (1) required abstention under the <u>Younger</u> doctrine; (2) Defendant Alford's immunity under the Eleventh Amendment; (3) the Court's lack of subject matter jurisdiction under the <u>Rooker-Feldman</u> doctrine; (4) failure to state a claim under the EPSDT; (5) failure to state a claim under the ADA; (6) failure to state a claim for violations of the Plaintiffs' substantive due process rights; and (7) the failure to the plaintiff to follow the proper pleading rules set forth in the Federal Rules of Civil Procedure. Each of these grounds will be examined, in turn.

I.    **The Court must abstain from hearing this case pursuant to the <u>Younger</u> abstention doctrine**

As stated previously, each of the named Plaintiffs have an open, active case in the South Carolina family court. Federal courts have long been leery of inserting themselves in cases such as these that pertain to what is undoubtedly a state function. <u>See, e.g.</u>, <u>Martin Marietta Corp. v. Maryland Com'n on Human Relations</u>, 38 F.2d 1392, 1396 (4th Cir. 1994) ("[t]he <u>Younger</u> doctrine was motivated by fundamental notions of federalism and comity" and "[t]he doctrine also recognizes that state courts are fully competent to decide issues of federal constitutional law") (citing <u>Younger v. Harris</u>, 401 U.S. 37, 44 (1971); <u>Lynch v. Snepp</u>, 472 F.2d 769, 774 (4th Cir. 1973)); <u>Burford v. Sun Oil Co.</u>, 320 U.S. 315, 318 (1943) ("it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy") (quoting <u>Commonwealth of Penn. V. Williams</u>, 294 U.S. 176, 185 (1935). In fact, abstention doctrines require federal courts to refrain from such overreaching. In particular, the <u>Younger</u> abstention doctrine requires this Court to decline to exercise jurisdiction in this case.

Under the doctrine, as outlined in <u>Younger</u>, a federal court "of equity should not act . . . when the moving party has an adequate remedy at law." 401 U.S. at 43. The <u>Younger</u> Court explained an additional underlying reason for the abstention doctrine:

> This underlying reason . . . is reinforced by an even more vital consideration, the notion of "comity," that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... The concept does not mean blind deference to "States' Rights" any more than it means centralization of control over every important issue in our National Government and its courts. The Framers rejected both these courses. What the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

<u>Id.</u> at 44. This same concern led to the extension of the <u>Younger</u> doctrine to civil proceedings, as well as criminal proceedings. <u>See also</u> <u>Pennzoil Co. v. Texaco, Inc.</u>, 481 U.S. 1, 11 (1987).

The United States Supreme Court announced a three-part test for <u>Younger</u> abstention in <u>Middlesex County Ethics Committee v. Garden State Bar Association</u>, 457 U.S. 423 (1982). The Fourth Circuit has clarified the test enunciated in <u>Middlesex</u> and set forth the following test to be used to determine when abstention is appropriate: "(1) there are ongoing state judicial proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal claims in state proceedings." <u>Martin Marietta Corp. v. Maryland Comm'n on Human Relations</u>, 38 F.3d 1392, 1396 (4th Cir. 1994). <u>Middlesex</u>, 457 U.S. at 432. <u>See also</u> <u>Harper v. Pub. Serv. Com'n of W. Va.</u>, 396 F.3d 348, 352 (4th Cir. 2005); <u>Mills v. Greenville Cnty.</u>, 586 F. Supp. 2d 480, 484 (D.S.C. 2008). This test promotes "the strong policy against federal court interference with any pending state judicial proceeding," absent extraordinary circumstances. <u>Martin Marietta</u>, 38 F.3d at 1396 (citing <u>Middlesex</u>, 457 U.S. at 431; <u>Younger</u>,

6

401 U.S. at 43).  Because all the requirements for <u>Younger</u> abstention are met in this case, the Plaintiffs' claims should be dismissed.

### a.  Ongoing Judicial Proceedings

South Carolina Title 63, the South Carolina Children's Code, defines the parent-child relationship and permissible areas of state intervention into this relationship.   One such intervention effort is removing children from their home and placing them into foster care.  Significantly, the South Carolina Legislature has vested the state family courts with exclusive jurisdiction over these proceedings.  <u>See, e.g.</u>, S.C. Code § 63-3-510(A)(1)(a) (granting "exclusive original jurisdiction . . . . Concerning any child . . . who is neglected"); S.C. Code Ann. § 63-7-20(7) (defining "Court" as "the family court"); S.C. Code Ann. § 63-7-1610 (granting "exclusive jurisdiction over all proceedings held pursuant to this article" to the family court).  As outlined below, South Carolina family courts oversee these cases from the initial determination to remove a child from the custody of the parent or guardian, throughout the child's placement in foster care, until the child leaves the foster care system, and sometimes beyond.

**<u>Removal from the Home</u>** - In South Carolina, the family court has sole authority to remove from the home and place into foster care a child whose safety and well-being is threatened.  The child may enter foster care because a law enforcement officer has taken emergency protective custody of the child, or the family court may take emergency protective custody of a child by *ex parte* order. S.C. Code §§ 63-7-620; 63-7-740.  In either event, the family court must review the decision within seventy-two hours of the removal to determine whether there was and there remains probable cause to believe the child's life, health, and physical safety are in danger and whether the child should remain in foster care pending a hearing on the merits.  S.C. Code Ann. § 63-7-710.   Additionally, at the conclusion of a child abuse and neglect investigation the

7

Department of Social Services may petition the family court to remove a child from the custody of the parents.  S.C. Code Ann. § 63-7-1660.  The family court must schedule a hearing within thirty-five days to determine whether removal is necessary.  Whether the child enters foster care through emergency protective custody or through non-emergency proceedings, the family court has exclusive authority to approve the removal decision.

**Initial Foster Care Placement** - Once the child is removed from the custody of the parent or guardian, the family court "must approve a placement plan" for the child and the child's parent or guardian.  S.C. Code Ann. § 63-7-1680(A).  This plan must be presented at the removal hearing or within ten (10) days after the removal hearing.  S.C. Code Ann. § 63-7-1680(A).  See also Dorchester Cnty. Dept. of Soc. Servs. v. Miller, 324 S.C. 445 (Ct. App. 1996) (noting that DSS must formulate and present a treatment plan to the family court during the removal hearing); Charleston Cnty. Dept. of Soc. Servs. v. Mother, 2007 WL 8326642 at *3 (Ct. App. 2007) (noting that "the family court must approve a placement for [a] child [who is removed from his parent's home]").  The placement plan must address the number of contacts a caseworker must have with the child while in foster care, the nature and location of the placement of the child, visitation with siblings, parents, and relatives, and the services that must be provided to the child and the foster parents during placement.  The placement plan may be amended at any time by agreement of the parties or upon motion of a party, and the family court may amend the placement plan based upon evidence demonstrating the need for amendment.  S.C. Code Ann. § 63-7-1680.

**On-going Foster Care Placement** – While in foster care, the family court must review the status of the child to determine a permanent plan for the child which must be held no later than one year after the date the child was placed in foster care.  S.C. Code Ann. § 63-7-1700(A).  At the permanency hearing, the family court reviews the permanency plan presented by DSS and may

determine whether the child should be returned to his/her parents, be placed in custody with a willing relative or nonrelative, or remain in foster care.  See S.C. Code Ann. § 63-7-1700; Charleston Cnty. DSS at *3.  As long as a child remains in foster care, the family court continues to monitor the child at permanency planning hearings, which must be held at least annually.  S.C. Code Ann. § 63-7-1700 (I)(3);(5).  For children who are retained in foster care for the purposes of reunification, the family court must hold an additional hearing within six (6) months of the original to determine a future plan for the child.  § 63-7-1700(I)(2).  For placement of a child with a willing relative or "suitable nonrelative" or returning a child to a parent, the family court may order supervision and services to the family for a period of time and maintains the right to terminate the placement on the motion of DSS or the child's guardian ad litem.  § 63-7-1700(I)(4).  Such a petition stays the Order's termination date until the petition may be heard.  Id.  Additionally, the family court, in any permanency Order which does not return a foster child to a parent, must address the compliance or non-compliance by all parties to the placement plan, whether services should continue or whether additional services are needed, and whether the child's current placement is "safe and appropriate."  S.C. Code Ann. § 63-7-1700(H)(2), (4), and (8).

Notably, a named party, the child's guardian ad litem, or the foster care review board may file a motion for review of the case **<u>at any time</u>** in order for the family court to examine or, in most cases, re-examine the appropriateness of the child's placement, the safety of the placement, the services provided to the child while in foster care, visitation with the parents/guardians or the siblings, the sufficiency of case worker visits, or any other matter affecting the child's placement, all issues Plaintiffs now ask this Court to also examine.  S.C. Code Ann. § 63-7-1700(K).  Further, any party in interest, including but not limited to the individual or agency with legal custody or placement of the child or the foster parent may move to intervene in the child's case.  Id.

**Termination of Foster Care** – If a child is retained in foster care and the family court terminates parental rights, the family court's jurisdiction terminates when the child is adopted or reaches age eighteen.  S.C. Code Ann. § 63-7-1700(I)(3);(5); S.C. Code Ann. § 63-7-1700(K) ("The pendency of an appeal concerning a child in foster care does not deprive the court of jurisdiction to hear a case pursuant to this section.  The Court shall retain jurisdiction to review the status of the child and may act on matters not affected by the appeal").  Even after the child is safely returned to his/her home after foster care, the court may order up to twelve months of continued supervision and services.  S.C. Code Ann. § 63-7-1700 (D).

Here, each of the eleven named Plaintiffs, in addition to all other children in foster care in South Carolina, have had and will continue to have this same level of family court involvement. Therefore, the first prong of Younger is met, as there are ongoing court proceedings involving all Plaintiffs in this lawsuit.  See also 31 Foster Children v. Bush, 329 F.3d 1255 (11th Cir. 2003) (upholding Younger abstention by the District Court and holding that the federal action would interfere with the continuing state proceedings of Florida's family courts, which were charged with overseeing the placement and monitoring of the plaintiff foster children under a statutory scheme extremely similar to South Carolina); Carson P. ex rel Foreman v. Heineman, 240 F.R.D. 456, 523 (D. Neb. 2007) (dismissing action based on Younger abstention and holding that ongoing state proceedings existed in the state's juvenile court system under a statutory scheme similar to South Carolina) (citing 31 Foster Children, 329 F.3d at 1277; J.B. ex rel. Hart v. Valdez, 186 F.3d 1280 (10th Cir. 1999); Laurie Q. v. Contra Costa County, 304 F.Supp.2d 1185, 1204 (N D. Cal. 2004); Olivia Y. ex rel. Johnson v. Barbour, 351 F.Supp.2d 543, 567–68 (S.D. Miss. 2004)).

    **b.**   **Important State Interests**

This case also implicates important state interests. Family relations have long been understood as an area of state concern. See Moore v. Sims, 442 U.S. 415, 435 (1979) (stating that "[f]amily relations are a traditional area of state concern" in directing the District Court to dismiss a case challenging Texas' child abuse statutes for alleged unconstitutionality); Thrower v. Cox, 425 F. Supp. 2d (D.S.C. 1976) ("[w]ithin the state of the Union, the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the state, and not to the laws of the United States") (citing Barber v. Barber, 16 L. Ed. 226 (1859)).

This state interest is further set forth in the South Carolina Children's Code, S.C. Code Ann. § 63-7-10, *et seq.* The opening sections of the Children's Code state that "[a]ny intervention by the State into family life on behalf of children must be guided by law, by strong philosophical underpinnings, and by sound professional standards for practice." S.C. Code Ann. § 63-7-10(A). The purpose of the Children's Code is to:

> (1) acknowledge the different intervention needs of families;
>
> (2) establish an effective system of services throughout the State to safeguard the well-being and development of endangered children and to preserve and stabilize family life, whenever appropriate;
>
> (3) ensure permanency on a timely basis for children when removal from their homes is necessary;
>
> (4) establish fair and equitable procedures, compatible with due process of law to intervene in family life with due regard to the safety and welfare of all family members; and
>
> (5) establish an effective system of protection of children from injury and harm while living in public and private residential agencies and institutions meant to serve them.

S.C. Code Ann. § 63-7-10(B). The opening sections set forth the services that will be provided on the basis of these principles and lay out a complex statutory scheme for achieving these goals. In

addition to the specific goals set forth in the Children's Code, Plaintiffs' Complaint acknowledges the significant attempts made by the State to recognize issues in the State's foster care system and implement reforms to this system.   Complaint, ¶ 149 (discussing the implementation of a "governor's task force" to identify problems and submit recommendations for the foster care system); ¶ 156 (noting the 2013 creation by the South Carolina Senate of a DSS Oversight Committee to examine DSS policies and practices); ¶ 157 (discussing the Senate's request to the Legislative Audit Council to investigate DSS policies and practices).   These statutory provisions and efforts further support that important state interests are involved in this case.  See e.g., Carson P., 240 F.R.D. at 524 (holding that state proceedings in a similar class action against the Nebraska child welfare system involved important state interests); 31 Foster Children, 329 F.3d at 1275 (noting that the Plaintiffs and Defendants in that case, a class action against the Florida Department of Children and families, agreed that the case involved important state interests).

### c.    Adequate Opportunity to Raise Claims in State Court

Finally, the South Carolina family courts provide Plaintiffs with an adequate opportunity to raise their claims in state court proceedings.  The Plaintiffs have brought claims for violation of Substantive Due Process under the Fourteenth Amendment of the United States Constitution, for violations of various provisions of the Federal Medicaid Act, and for violations of Title II of the ADA.  The Plaintiffs must demonstrate that the South Carolina family courts provide them with an inadequate opportunity to remedy these alleged violations.

The burden is on the Plaintiffs to demonstrate that South Carolina's state courts provide an inadequate forum for addressing their complaints.  As the Supreme Court pointed out in Pennzoil, "Article VI of the United States Constitution declares that 'the Judges in every State shall be bound' by the Federal Constitution, laws, and treaties."  481 U.S. at 15.  Therefore, "a

federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." Id. Similarly, the Fourth Circuit has held that "Younger recognizes that state courts are fully competent to decide issues of federal law and has as a corollary the idea that all state and federal claims should be presented to the state courts." Beam v. Tatum, 299 Fed. Appx. 243, 246 (4th Cir. 2008) (citing Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 251 (4th Cir. 1993)).

There is no reason why South Carolina state courts are not competent to decide the issues raised by the Plaintiffs. The South Carolina family courts are empowered to hear constitutional challenges. See Hooper v. Rockwell, 334 S.C. 281, 292-95, 513 S.E.2d 358, 364-66 (1999) (noting that a constitutional challenge to an emergency protective custody statute was "first presented . . . to the family court at a motions hearing"); S.C. Dept. of Soc. Servs. v. Wilson, 342 S.C. 242, 536 S.E.2d 392 (Ct. App. 2000) aff'd as modified, 352 S.C. 445, 574 S.E.2d 730 (discussing constitutional challenge of father whose confrontation rights were raised and ruled on by a family court judge); S.C. Dept. of Soc. Servs. v. Sarah W., 402 S.C. 324, 741 S.E.2d 739 (2013) (examining constitutional challenge to termination of parental rights in family court case). Similarly, South Carolina's family court system has dealt with issues arising under the Americans with Disabilities Act. S.C. Dept. of Soc. Servs. v. Mother ex rel. Minor Child, 375 S.C. 276, 651 S.E.2d 622 (2007) (holding that ADA did not prevent termination of mother's parental rights).

Simply put, there is no reason to believe that the remedies sought by the Plaintiffs could not be addressed in the pending state court proceedings. As previously discussed, the South Carolina family courts exercise a large degree of authority over DSS and the children in foster care in South Carolina. The courts appoint guardians ad litem for each child and can appoint counsel for a child (S.C. Code Ann. § 63-7-1620(1)-(2)), issue ruling regarding the appropriateness and

adequacy of placement plans or permanency plans suggested by DSS (S.C. Code Ann. § 63-7-1680(A);(F); S.C. Code Ann. § 63-7-1700(A)); make amendments or modifications to those plans (S.C. Code Ann. § 63-7-1680(I); S.C. Code Ann. § 63-7-1700(J)), order that certain services be provided to children and their families (S.C. Code Ann. § 63-7-1680(D)(2);(E)(3)), order visitation of siblings and other family members (S.C. Code Ann. § 63-7-1680(E)(2)), and otherwise provide oversight to ensure the safety and well-being of the State's foster care children.  The family court may also order a state or county director of DSS or other authorized representative to show cause as to why a plan is not being implemented according to the court's order, and may find individuals in contempt or subject the individual to sanctions for failure to comply with the court's order.  S.C. Code Ann. § 63-7-1680(K).  Finally, at all times while a child is in foster care, "[a] named party, the child's guardian ad litem, or the local foster care review board may file a motion for review of the case at any time."  S.C. Code Ann. § 63-7-1700(J).  Therefore, South Carolina's family courts provide an adequate forum for the Plaintiffs' complaints.  See also 31 Foster Children, 329 F.3d 1255 (finding Florida's family courts provided sufficient forum to hear plaintiffs' complaints under a similar statutory scheme to South Carolina); Carson P., 240 F.R.D. 456 (same).

"Younger abstention requires a federal court to abstain from interfering in state proceedings."  Beam, 299 Fed. Appx. at 246.  Here, there are ongoing state proceedings involving all Plaintiffs, the care of children within the South Carolina foster care system is an important state interest, and the family courts exercising jurisdiction provide an adequate forum for the Plaintiffs, the Court must dismiss the Complaint.  Plaintiffs cannot now ask the federal court to supervise foster care in South Carolina simply because they do not agree with the oversight of the South Carolina family court.  Accordingly, this Court must dismiss Plaintiffs' Complaint.

## II.     The Defendant is immune from suit under the Eleventh Amendment.

14

Defendant Alford is immune from suit pursuant to the Eleventh Amendment of the United States Constitution.  The Eleventh Amendment states:

> [t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.  This Eleventh Amendment immunity also extends to the suits against a state by one of its own citizens without the state's consent.  Alden v. Maine, 526 U.S. 706, 727-28 (1999).  The Supreme Court announced an exception to this rule in Ex parte Young, 209 U.S. 123 (1908), however, which permits suits against state officers for prospective injunctive relief for ongoing violations of federal law.  See also Hutto, 773 F.3d at 542.

As an initial matter, although the Complaint nominally seeks injunctive relief, in reality Plaintiffs challenge the adequacy of the funding of DSS.  Plaintiffs' Complaint demands additional foster homes and other placement options for foster children[4], a lower caseload for all "case-carrying workers for children in DSS," and additional capacity for medical, dental, and mental health screenings.  Complaint, Section VII(d).  Each of these requests, however, is merely a veiled request for monetary relief.  Plaintiffs essentially seek additional funding for DSS in order to remedy the alleged wrongs, which is prohibited under the Eleventh Amendment.

As previously mentioned, the Ex parte Young exception to Eleventh Amendment immunity only applies to injunctive relief.  Hutto, 773 F.3d at 542.  As the Supreme Court has held, where "private parties seek[] to impose a liability which must be paid from public funds in the state treasury," such an action "is barred by the Eleventh Amendment."  Edelman v. Jordan, 415 U.S. 651, 663 (1974) (citing Great Northern Life Ins. Co. v. Read, 322 U.S. 47 (1944); Kennecott

---

[4] The specific requests for relief for each subclass vary in the particulars but essentially amount to a request that the Court order an increase in the availability of certain types of foster care.  See Complaint, Section VII(d).

Copper Corp. v. State Tax Comm'n, 327 U.S. 573 (1946)).  See also Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459 (1945).  Expenditure of certain funds is permitted under Ex parte Young where the expenditure is an "ancillary effect on the state treasury."  Edelman, 415 U.S. at 667-68.

Here, the Plaintiffs' request for relief seeks additional foster home and specialty foster care capacity, additional capacity for housing foster care siblings together, additional capacity to prevent placement of foster children in juvenile justice facilities, addition of case-carrying DSS workers, and additional capacity for health treatment.  Complaint, Section VII(d).  The increase in "capacity" and the furnishing of additional "resources" clearly cannot be accomplished without additional funding.  In fact, the only request for relief that seeks anything other than additional "resources" and "capacity" are those set forth in Sections VII(d)(iii) and (d)(vii) of the Complaint.  However, the request in Section VII(d)(iii) that "DSS shall ensure the services and periodicity of initial and periodic medical, dental and mental health screens and treatment for foster children in DSS custody" is nothing more than a request for additional capacity, as is made clear in the related request for relief for the disability subclass, which reads:  "DSS shall *build capacity* to ensure that children in the Disability Subclass receive services and periodicity of initial and periodic mental health screens and treatment."  Complaint, Section VII(d)(v) (emphasis added).  Thus, like the other allegations in the Complaint, this request for relief seeks only additional money to build "capacity" for an increased number of health screenings.

Section VII(d)(vii) of the Complaint initially appears to be different from the other requests for relief in that it asks that "DSS shall develop and implement policies providing for minimally adequate visitation and other contact among children in the Sibling Subclass when they cannot be placed together."  Thus, on its face, it appears to seek injunctive relief regarding allegedly deficient policies and procedures.  However, Plaintiffs argue elsewhere in the Complaint that this alleged

failure is a result of "high caseloads." Complaint, ¶ 212. Thus, this claim is also monetary in nature, as the agency remedy for high caseloads is to hire additional case workers. Therefore, while prospective injunctive relief under Ex parte Young is allowed where it has no more than an "ancillary effect" on a state's treasury, the relief requested by Plaintiffs in the instant action is completely dependent upon additional funding and, therefore, is barred under the Eleventh Amendment. See also S.C. Wildlife Fed. v. Limehouse, 549 F.3d 324, 332 (4th Cir. 2008) (relief requested must "add[] no additional burden on the Defendants other than the injunctive relief, and therefore does not threaten the sovereignty of the state, represented by the director").

Even if the Court determines that the Complaint is one for prospective injunctive relief and that monetary damages are only ancillary, the Court should still dismiss Defendant Susan Alford because she lacks sufficient connection to the acts complained of by the Plaintiffs. The Ex parte Young exception only applies to a party who has "some connection with the enforcement of the act" which is allegedly unconstitutional. Hutto, 773 F.3d at 550 (citing Ex parte Young, 209 U.S. at 157). Requiring a showing that a party has a special relationship with the enforcement over the allegedly unconstitutional statute "prevents parties from circumventing a State's Eleventh Amendment immunity." Hutto, 773 F.3d at 550 (citation omitted). See also McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010) ("Thus, we must find a 'special relation' between the officer being sued and the challenged statute before invoking the [Ex parte Young] exception."). Specifically, a plaintiff must show "*proximity to* and *responsibility for* the challenged state action" in order for the Ex parte Young exception to apply to a state official. McBurney, 616 F.3d at 399 (quoting Limehouse, 549 F.3d at 333) (emphasis in original).

In determining whether an individual has sufficient connection with the enforcement of the unconstitutional act, a "[g]eneral authority to enforce the laws of a state is not sufficient to make

17

government officials the proper parties to litigation challenging state law." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 333 (4th Cir. 2001). Similarly, an individual who is a passive participant in a challenged statutory scheme is not a proper party litigant pursuant to the exception in Ex parte Young. See Hutto, 773 F.3d at 551 (holding that the trustees and administrators of the South Carolina Retirement System who passively accepted and managed money removed from participants' paychecks did not fit within the Ex parte Young exception and were immune from suit under the Eleventh Amendment). Thus, only an official who is an active participant in the enforcement of the statutory scheme or the conduct complained of is subject to the Ex parte Young exception to Eleventh Amendment immunity.

In this case, Defendant Alford does not have the requisite connection to fit within the Ex parte Young exception and is entitled to Eleventh Amendment immunity. As discussed above, the Plaintiffs essentially seek an increase in funding for DSS, which would increase the department's "capacity" in a number of areas. The Defendant, however, has no responsibility for this alleged deficiency. Defendant Alford is vested with no authority under state law to determine appropriations to the Department. As the South Carolina Supreme Court has noted:

> Under our form of government the Legislature is given plenary power in the matter of taxation, subject, of course, to express constitutional limitation. . . . The Legislature has the power to deprive the state or any of its political subdivisions of any source of revenue by proper legislation, subject to constitutional limitations . . . ."

Clarke v. S.C. Pub. Serv. Auth., 177 S.C. 427, 181 S.E. 481 (1935). See also State ex rel. Condon v. Hodges, 349 S.C. 232, 244-45, 562 S.E.2d 623, 630 (2002) (the General Assembly has "the duty and authority to appropriate money as necessary for the operation of the agencies of government and the right to specify the conditions under which the appropriated monies shall be spent") (quoting State ex rel. McLeod v. McInnis, 278 S.C. 307, 313-14, 295 S.E.2d 623, 637 (1982)).

Thus, where the only remedy sought is additional funding, Defendant Alford lacks the requisite "*proximity to* and *responsibility for* the challenged state action" and, therefore, is immune under the Eleventh Amendment. McBurney, 616 F.3d at 399 (emphasis in original) (citation omitted).

Moreover, as the United States Supreme Court and Fourth Circuit have recognized, the Ex parte Young exception does not apply to cases involving "special sovereignty interests" of a state. Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 281 (1997). See also Bragg v. W. Va. Coal Ass'n, 248 F.3d 275 (4th Cir. 2001). In fact, a federal court must be careful that the application of the Ex parte Young exception be "more than a reflexive reliance on an obvious fiction." Bragg, 248 F.3d at 293 (quoting Coeur d'Alene, 521 U.S. at 270) (internal quotation marks omitted). Put another way, "just because a private citizen's federal suit seeks declaratory injunctive relief against State officials does not mean that it must automatically be allowed to proceed under an exception to the Eleventh Amendment Protection." Bragg, 248 F.3d at 293 (citation omitted).

Here the relief sought would offend "the dignity and respect afforded" to the State of South Carolina under the Eleventh Amendment. Coeur d'Alene, 521 U.S. at 268. As the Fourth Circuit pointed out in Bragg, a state suffers special indignity "when a federal court orders that State's officers to conform their conduct with their own laws." 248 F.3d at 297. In the instant case, not only does the subject matter of the action involve an area of traditional state concern, but the action also seeks that federal courts direct the actions of DSS and the South Carolina family courts pursuant to South Carolina's Children's Code. See, e.g., Moore, 442 U.S. at 435 (stating that "[f]amily relations are a traditional area of state concern" and directing dismissal of a case against Texas' child abuse statutes for alleged unconstitutionality).[5] Here, the State's important sovereign

---

[5] Plaintiffs' Complaint is couched only in terms of federal causes of action. However, Plaintiffs do not challenge the South Carolina statutes empowering DSS and the family court to act on behalf of foster children, instead challenging only the actions of the department pursuant to these statutes.

interest in an area of family relations and the impropriety of allowing a federal court to direct and oversee the application of its complex Children's Code place the Complaint outside the Ex parte Young exception to Eleventh Amendment immunity.  Therefore, the Plaintiffs' Complaint should be dismissed pursuant to the Defendant's Eleventh Amendment immunity.

III.    **The Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine.**

The Court also lacks subject matter jurisdiction over this matter pursuant to the Rooker-Feldman doctrine.  The Rooker-Feldman doctrine prevents federal courts from reviewing final state court judgments and declaring those judgments null and void.  Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Supreme Court has subsequently clarified that the Rooker-Feldman doctrine is available in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The reason for this doctrine is that federal district courts are courts only of original jurisdiction and, therefore, lacked the requisite appellate authority to review the state court decision.  Id. (citing Rooker, 263 U.S. at 416).  It matters not whether the specific claims raised in the federal complaint were raised in the state court action.  Davani v. Vir. Dept. of Transp., 434 F.3d 712 (4th Cir. 2006).  The plaintiff simply must be "seeking redress for an injury caused by the state-court decision itself – even if the basis of the claims was not asserted to the state court."

---

Therefore, Plaintiffs seek to have the federal courts insert themselves into and oversee the application of these state law provisions.

20

2:15-cv-00134-RMG    Date Filed 03/16/15    Entry Number 17-1    Page 21 of 34

Id.  The Fourth Circuit has also described the test as preventing a state court loser from bringing claims that are "inextricably intertwined" with the state court's decision.  Id.

In this case, the Plaintiffs' Complaint challenges the placement and treatment of foster children within the South Carolina foster care system.  All remedies sought involve the placement of children in DSS care.  Through this lawsuit and these remedies, plaintiffs seek to overturn the decisions of South Carolina's family courts with regard to the placement and treatment of Plaintiffs.  The South Carolina Children's Code vests authority to make decisions regarding removal of children from their parents and placement of children within the DSS system in the South Carolina family courts.  See, e.g., S.C. Code Ann. § 63-7-20(7) (defining "Court" as used in the Children's Code as "the family court"); S.C. Code Ann. § 63-7-1610 (granting the family court "exclusive jurisdiction over all proceedings held pursuant to this article"); S.C. Code Ann. § 63-7-660 (prohibiting DSS from removing a child from the custody of a parent/guardian without a family court order); S.C. Code Ann. § 63-7-710 (requiring a probable cause hearing in front of the family court within 72 hours of taking a child into emergency custody); and S.C. Code Ann. § 63-7-1700 (setting forth the family court's role in permanency planning for children in foster care).  The family court must approve a placement plan for any foster child who is removed from the custody of a parent/guardian.  S.C. Code Ann. § 63-7-1680(A).  This plan must address matters including "visitation or contact with siblings, other relatives, or persons important to the child," and also must include "social and other supportive services."  S.C. Code Ann. § 63-7-1680(E).  Thus, the placement of each foster child is the result of an Order by the South Carolina family court.[6]

---

[6] A more in-depth discussion of the family court's review powers are set forth in Section I, *supra*.

Plaintiffs in this case challenge these family court orders, alleging that the placements violate the Plaintiffs' constitutional rights. The injuries alleged by Plaintiffs directly flow from the family courts' decisions. For example, the alleged failure to allow the children proper visitation with their families, and the alleged failure to provide appropriate health services are all contained within the family court placement Order for each child. Because Plaintiffs seek redress for injuries that allegedly result from these placement orders, made by the State's family courts, this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine and the case should be dismissed. See also Davani, 434 F.3d at 713 (Rooker-Feldman doctrine prohibits federal court plaintiffs from "seeking redress for an injury caused by [a] state-court decision").

### IV. Plaintiffs' claims should be dismissed because they violate the constitutional principle of separation of powers

The plaintiffs' claims should also be dismissed as a violation of the constitutional principle of separation of powers. The United States Department of Health and Human Services, Administration for Children and Families, Children's Bureau ("Children's Bureau") administers Child and Family Services Reviews (CFSR). 45 C.F.R. § 1355.10, *et seq.* The CFSR is the periodic review of the states' child welfare systems the purpose of which is to achieve three goals:

1) Ensure compliance with federal child welfare requirements;
2) Determine what is actually happening to children and families as they are engaged in child welfare services;
3) Assist states to achieve systemic improvements that help children and families achieve positive outcomes;

The CFSR is a two-phase process. The first phase is a statewide assessment of child welfare services. The second phase is an on-site case review as required by 45 C.F.R. § 1355.33. In both phases of the CFSR, the states are assessed regarding seven expected outcomes for children and families who are receiving child welfare services and seven systemic factors that affect child outcomes.

The Children's Bureau has conducted the CFSR since 2000. Section 1123A of the Social Security Act requires the Department of Health and Human Services to review the states' child welfare services programs to ensure substantial conformity with the state plan requirements in Titles IVB and IVE of the Social Security Act. 42 U.S.C. 1320a–1a. The CFSR assesses the state's child protection, foster care, adoption, family preservation, and independent living programs, measuring performance in three areas (safety, permanency, and well-being) and seven systemic factors. The CFSR identifies strengths and areas needing improvement, and based upon these findings, the state develops a Program Improvement Plan (PIP) to address areas in which the state is found not to be in conformity with safety, permanency, and well-being outcomes or the systemic factors the CFSR measures. The CFSR promotes ongoing state self-evaluation of programs and outcomes.

Under the CFSR, there is joint planning between the state and the Children's Bureau, from statewide assessment to case reviews to identifying areas needing improvement and measurement for inclusion in the PIP to monitoring of the state's performance. Additionally, the CFSR collects information about a state's performance from statewide data indicators, case records, case-related interviews with children, parents, foster parents, caseworkers, partners, stakeholders, and other professionals. Despite this collaboration, final decisions rest with the Children's Bureau to determine the proper method of improving performance and determining whether the state is in substantial compliance with its plan. See, 45 C.F.R. § 1355.35 (where there is no consensus between the federal agency and the state agency, the federal agency retains final authority to set requirements); 45 C.F.R. § 1355.56 (setting forth the consequences where the federal agency determines that the state agency does not meet the federal requirements). Therefore, the executive branch, through the Children's Bureau, takes an active role in crafting and enforcing South

23

Carolina's social services guidelines, and ensuring these guidelines are in conformance with federal law.

In this United States, "[t]he Constitution sought to divide the delegated powers of the new Federal Government into three defined categories, Legislative, Executive, and Judicial." INS v. Chadha, 462 U.S. 919, 951 (1983). As the Supreme Court has noted, "[t]he fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, direct or indirect, of either of the others, has often been stressed and is hardly open to serious question." Humphrey's Executor v. United States, 295 U.S. 602, 629-30 (1935). The Court has "held that executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Art. III of the Constitution." Buckley v. Valeo, 424 U.S. 1, 123 (1976) (citing United States v. Ferreira, 54 U.S. 40 (1852); Hayburn's Case, 2 U.S. 409 (1792)). Under the United States Constitution, "the separation-of-powers doctrine requires that a branch not impair another in the performance of its constitutional duties." Loving v. United States, 517 U.S. 748, 757 (1996).

Here, however, the Plaintiffs' seek to have the judicial branch enforce a remedial system for alleged infirmities in the South Carolina DSS. This system would interfere with and could even contradict the oversight already in place by the Children's Bureau, an arm of the federal executive branch. As enforcement of federal laws lies within the sole purview of the executive branch, such oversight by the Court would interfere with the executive branch's powers, and is not allowed under the Constitution's separation of powers doctrine.

      **V.**    **Plaintiffs' Claim for violation of the EPSDT must be dismissed because there is no private right of action under § 1983, the claims are barred by Defendant's Eleventh Amendment Immunity, and the EPSDT Causes of Action Fail to State a Claim.**

In their Complaint, the Plaintiffs assert two causes of action for alleged violations of the EPSDT (42 U.S.C. §§ 1396a(a)(10)(A), 1396a(43)(B), 1396a(43)(C), 1396d(a), 1396d(r)). Complaint, Second and Fourth Causes of Action.  However, these claims should be dismissed because the EPSDT does not create a private right of action, the claims are barred under the Defendant's Eleventh Amendment immunity, and the claims fail to state a cause of action.

### a.  The EPSDT does not create a private right of action

The Plaintiffs' cause of action for violation of the EPSDT should be dismissed because the EPSDT does not create a private right of action.  Typically, there are three principal factors used in determining whether a statutory provisions creates a privately enforceable right: (1) whether Congress intended that a plaintiff be a beneficiary of the statute; (2) whether a plaintiff's rights under the statute are so vague and amorphous as to be beyond the competence of the judiciary to enforce; and (3) whether the statute in question unambiguously imposes a binding obligation on the State. Blessing v. Freestone, 520 U.S. 329, 340-41 (1997).  In Gonzaga University v. Doe, 536 U.S. 273 (2002), the Supreme Court held that when Congress passes legislation pursuant to the spending power, "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." Id. at 280 (quoting Pennhurst State School and Hospital v. Halderman, 451 U.S. 1, 28 (1981)).  The only way to overcome this assumption is through evidence that "Congress speaks with a clear voice, and manifests an unambiguous intent to confer individual rights." Id. (internal citations and punctuation omitted).

In the instant case, the statutory language of EPSDT does not create a private right of action.  The EPSDT is merely a portion of the "State plan for medical assistance" that each state must complete in order to be eligible for Medicaid funds.  See 42 U.S.C. § 1396(a)(a).  Under the

statutes, the Secretary of Health and Human Services may withhold funds if a State fails to comply with conditions set forth in 42 U.S.C. § 1396. 42 U.S.C. § 1396(c). Taken in its broad context, the provisions of 42 U.S.C. § 1396a and § 1396d simply set forth the "strings" attached to the availability of federal funds, and does not evince an unambiguous intent to create a private right of action. See Gonzaga, 451 U.S. at 28.

The language of the statutory provisions relied upon by the Plaintiffs is also too vague to evince intent to create a private right of action. In Suter v. Artis M., 503 U.S. 347 (1980), the Supreme Court examined the statutory provisions of the Adoption Assistance and Child Welfare Act of 1980. In determining that there was no private right of action under the challenged provisions, the Court held that the use of the term "reasonable efforts" as the standard that had to be maintained under the statute was "not specific and d[id] not provide notice to the States that failure to do anything other than submit a plan with the requisite features, to be approved by the Secretary, is a further condition on the receipt of funds from the Federal Government." Id. at 361-62. Therefore, the statute could not create a private right of action.

The EPSDT suffers from similar shortcomings. Under 42 U.S.C. § 1396a(a)(10)(A), the state must make "make medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17), (21), and (28) of section 1396d(a) of this title." Similarly 42 U.S.C. § 1396a(43)(B) and (C) require services be made available "as described in section 1396d(r)." However, the early period screening, diagnostic, and treatment services described in section 1396(d)(r) have standards similar to those in Suter. The services are to be provided at "medically necessary" intervals and according to "reasonable standards of . . . practice." 1396(d)(r). Additionally, the services must include "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or

26

ameliorate defects and physical and mental illnesses and conditions discovered by the screening services." Id.  These standards are simply too vague and ambiguous to put the state on notice that "failure to do anything other than submit a plan with the requisite features, to be approved by the Secretary, is a further condition on the receipt of funds from the Federal Government." Suter, 503 U.S. at 361-62.  The plaintiff's rights are too vague and amorphous to be enforceable, and the statute does not unambiguously impose a binding obligation on the State.  Blessing, 520 U.S. at 340-41.  Therefore, there is no private right of action under the EPSDT statutes cited in the Complaint, and these claims should be dismissed.

### b.  The EPSDT claims are barred under Seminole Tribe of Florida v. Florida

Additionally, under Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996) the EPSDT cause of action must be dismissed under the Eleventh Amendment.  In Seminole, the Supreme Court held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a State of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon Ex parte Young." Id. at 74. The Court went on to hold that the action pursuant to the Indian Gaming Regulatory Act should be dismissed on the basis of Eleventh Amendment immunity.

The EPSDT also provides an extensive remedial scheme for enforcement.[7]  The EPSDT contains exhaustive requirements for state plans, which must be approved by the Federal Government before the state is entitled to federal funds.  The EPSDT also provides a remedy for violations of the plans at issue, by allowing the Secretary of Health and Human Services to withhold federal funds where the plans are not in compliance.  42 U.S.C. § 1396(c).  This is a

---

[7] The remedial scheme is part of the federal Medicaid Act, of which the EPSDT provisions are a small portion.  For the sake of clarity, both are referred to simply as the "EPSDT."

powerful enforcement tool, and the manner by which Congress has elected to enforce the EPSDT. Based on this extensive remedial scheme, the Plaintiffs' EPDST claims are not entitled to the <u>Ex parte Young</u> exception, and these claims should be dismissed pursuant to the Defendant's Eleventh Amendment immunity.

### c.   The EPSDT claims fail to state a cause of action

Even assuming the EPSDT claims are not foreclosed by the lack of a private right of action or the Defendant's Eleventh Amendment Immunity pursuant to <u>Seminole</u>, the EPSDT causes of action should be dismissed for failure to state a claim upon which relief may be granted.

The Plaintiffs allege violations of the EPSDT program of the Federal Medicaid Act for all Plaintiffs, but the allegations fail to address the specific failures relating to each Plaintiff.  In the factual portion of the Complaint relating to each individual Plaintiff, there are vague allegations of additional treatment that the Plaintiff should have received.  <u>See, e.g.</u>, Complaint, ¶ 25; ¶ 40; ¶ 44; 79; ¶¶ 89-90; ¶ 103; ¶ 107.  However, nothing in the either the factual allegations or the paragraphs setting forth the causes of action ever attempts to demonstrate how these alleged failures violated the provisions of the EPSDT, or to show that the violations are ongoing.  <u>Id.</u>  For some Plaintiffs, there appear to be no specific allegations of medical treatment deficiencies, much less allegations of violations of the EPSDT.[8]  <u>See, e.g.</u>, Complaint, ¶¶ 59-75 (Zahara L.); ¶¶104-06 (Annie B.); ¶ 108 (Roger B.)[9]; ¶¶ 111-120 (Kyle S.).

---

[8] The difficulties in determining which allegations relate to the individual causes of action is addressed in Section VI, *infra.*

[9] The only allegation regarding Roger B. is that he was not treated for an alleged issue until "a month and a half after [he] was placed in DSS's care."  Complaint, ¶ 108.  However, there are no allegations of any ongoing issues with Roger B.'s medical treatment and, therefore, nothing to support the EPSDT action as it relates to Roger B.

To the extent the Complaint can be read to make allegations of insufficient care, the EPSDT claims should be dismissed because the EPSDT only requires the state to furnish medical assistance by paying the cost of covered services to eligible minors.   See Bruggeman v. Blagojevich, 324 F.3d 906, 910 (7th Cir. 2003) ("statutory reference to 'assistance' appears to have reference to *financial* assistance rather than to actual medical *services*"); Westside Mothers v. Olszewski, 454 F.3d 532, 539-40 (6th Cir. 2006) ("[t]he most reasonable interpretation of the § 1396a(a)(10) [of the EPSDT] is that medical assistance, i.e., financial assistance, must be provided for at least the care and services listed in [certain] paragraphs [of the EPSDT]").   In this case, however, plaintiffs appear to seek actual arrangement and provision of medical services by the State, a remedy that does not exist under the EPSDT.   Therefore, because the Plaintiffs have failed to properly allege violations of the EPSDT with respect to each Plaintiff, the Second and Fourth Causes of Action should be dismissed.

**VI.    Plaintiffs fail to state a claim under Title II of the ADA.**

The Plaintiffs' claims for violations of Title II of the ADA must also be dismissed because the Plaintiffs fail to state a claim under the Act.   The Plaintiffs' Third Cause of Action alleges violations of Title II of the ADA, and these allegations relate only to Plaintiffs Michelle H., Ava R., Zahara L., Sammy V., and Andrew R.

In the Fourth Circuit, in order to establish a violation of the ADA, a plaintiff must demonstrate: "(1) that he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability." Baird ex rel. Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999) (citing Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995)).   The Complaint, however, fails to properly plead these elements.

As an initial matter, the Complaint makes no specific factual allegations with regard to the alleged disabilities of each of the Plaintiffs. See Complaint, ¶¶ 23 - 98. Similarly, none of the factual allegations related to the individual Plaintiffs at issue specifically identify the benefits that each Plaintiff would otherwise be qualified for. Id. No specific denial of benefits is ever discussed in the individual allegations. Finally, the Plaintiffs' specific allegations do not show that any of the plaintiffs were excluded from these unknown benefits *solely* as a result of their disability. Id.

The cause of action for violation of Title II of the ADA is nothing more than the "a formulaic recitation of the elements" of this cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). There are no specific factual assertions tied to the allegations in the cause of action. Rather, the cause of action is simply a "naked assertion devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557) (internal quotation marks omitted). In fact, there is nothing in the factual allegations related to each of the Plaintiffs bringing the ADA claims that differs in any substantial way from the allegations of the other Plaintiffs to the action. Because the Complaint fails to state a plausible claim for relief under the ADA, the Third Cause of Action must be dismissed.

## VII. Plaintiffs Complaint must be dismissed because the due process allegations fail to allege sufficient injury.

The Plaintiffs' Complaint fails to state facts sufficient to demonstrate injury and should be dismissed. In order to obtain prospective injunctive relief, there must be a showing of "irreparable injury" or "a likelihood of substantial and immediate irreparable injury." McBurney v. Cuccinelli, 616 F.3d 393, 413 (4th Cir. 2010) (citations omitted). In the instant case, however, plaintiffs are unable to make this showing.

The Complaint alleges that the substantive due process rights of all Plaintiffs under the Fourteenth Amendment were violated by "Deficiencies in Placement Array and Excessive

Workload and Safety Monitoring."  Complaint, First Cause of Action.  However, Plaintiffs fail to allege with any specificity the violations currently being suffered by each of the Plaintiffs.  While the allegations for each child set forth alleged mistreatment during custody, this is a Complaint for prospective injunctive relief.  None of the allegations relative to the specific Plaintiffs about their current placements indicate that the Plaintiffs are suffering "irreparable injury" or "a likelihood of substantial and immediate irreparable injury."  McBurney, 616 F.3d at 413.  Therefore, the Plaintiffs' First Cause of Action must be dismissed.

The Plaintiffs' Fifth Cause of Action alleges violation of a substantive due process right to familial association with siblings.  Just as in the First Cause of Action, this claim fails because Plaintiffs have failed to demonstrate they are suffering "irreparable injury" or "a likelihood of substantial and immediate irreparable injury."  Id.  Although the allegations for each of the Plaintiffs making a claim with respect to familial association with siblings allege past failure of visitation with siblings, the allegations either fail to assert that there is no current sibling visitation (Complaint, ¶¶ 59-75 (Zahara L.); ¶¶ 99-110 (Marcus B.; Annie B.; Cameron B.; Sara B.; Roger B); ¶¶ 111-20 (Kyle S.)) or do not set forth any allegations regarding the actions of the Defendant which have prevented sibling visitation (Complaint, ¶¶ 76-85 (Sammy V.)).  Therefore, these claims fail to state a cause of action and must be dismissed.

Finally, the Complaint also contains a cause of action for substantive due process rights violations for certain Plaintiffs in the foster care system who have been detained by the juvenile justice system.  This cause of action also fails to state a claim upon which relief may be granted.  A number of the individuals are not currently placed in a juvenile detention facility or in immediate danger of being placed in such a facility.  Complaint, ¶ 58 (Ava R.); ¶ 86 (Andrew R.); ¶ 119 (Kyle R.).  As for the remaining Plaintiffs, the Complaint fails to allege with any specificity how the

Plaintiffs' placements are the result of conduct on the part of the Defendants. Therefore, the Plaintiffs' Sixth Cause of Action should be dismissed.

### VIII. Plaintiffs' Complaint fails to follow proper federal pleading standards and should be dismissed.

The Plaintiffs' Complaint must also be dismissed because the Plaintiffs Complaint is an improper "shotgun pleading." Plaintiffs' Complaint contains 255 paragraphs of factual allegations (over 63 pages) before arriving at their First Cause of Action. In their First Cause of Action, the Plaintiffs claim that the Defendants violated their substantive due process rights under the Fourteenth Amendment in various particulars. These violations were allegedly the result of "[t]he foregoing policies and practices of the Defendants," which categorically incorporates by reference "The allegations in paragraphs 1-11, 13, 14, 16-22, Section III, 124-130, 137-142, Section V., Section VI.A.1, Section VI.A.2, Section VI.A.4, Section VI.A.5, and Section VI.B of the Complaint." Complaint, ¶¶ 256-59. This same formulaic pleading is used in each cause of action asserted by the Plaintiffs. See Complaint, ¶ 262 (alleging violation of the EPSDT program of the Federal Medicaid Act based on "the foregoing actions and inactions by Defendants); ¶ 264 (alleging violations of Title II of the ADA "[a]s a result of the foregoing actions and inactions of the Defendants"); ¶ 271 (alleging additional violations of the EPSDT program "[a]s a result of the foregoing actions and inactions by Defendants"); ¶¶ 274; 279 (alleging additional violations of Plaintiffs' substantive due process rights under the Fourteenth Amendment, based on "[t]he foregoing policies and practices of the Defendants"). Each subsequent cause of action includes wholesale incorporation of most of the allegations of the Complaint. The factual particularity of the first 255 paragraphs is simply "not connected to the otherwise generally pled claim[s] in any meaningful way." Wagner v. First Horizon Pharmaceutical Corp., 464 F.3d 1273, 1280 (11th Cir. 2006). This kind of pleading "wreak[s] havoc on the judicial system" and is strongly disfavored.

Id. at 1279 (citation omitted). "Such pleadings require the Court to engage in constant cross-referencing to locate relevant allegations" and "frequently plead[] evidence, and the Federal Rules of Civil Procedure discourage the pleading of evidence." Sewraz v. Morchower, 2009 WL 211578 at *1 (E.D. Va. Jan. 28 2009) (citing Strategic Income Fund, LLC v. Spear, Leeds, & Kellogg Corp., 305 F.3d 1293, 1295-96 (11th Cir. 2002)); See also McLean Contracting Co. v. Waterman Steamship Corp., 277 F.3d 477, 480 (citing Morro v. City of Birmingham, 117 F.3d 508, 515 (11th Cir. 1997) for the proposition that "the use of shotgun pleadings in civil cases is a ubiquitous problem, making it particularly important for district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues before trial"); Odom v. South Carolina, 2014 WL 5323949 at *7 (D.S.C. Sep. 12, 2014) (noting the difficulties that arise from shotgun pleadings); Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir. 1990) (noting the importance of filing a pleading "with clarity sufficient to avoid requiring a district court or opposing party to foresver sift through its pages" to find the plaintiff's claims.   Therefore, Defendant Alford requests the Court dismiss the Plaintiffs' Complaint.  In the alternative, Defendant requests that the Plaintiffs be required to replead their Complaint with sufficient factual particularity, pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

## CONCLUSION

Based on the foregoing, the Plaintiffs' Complaint must be dismissed for the following reasons: (1) the Court must abstain from hearing this case under the Younger abstention doctrine; (2) suit is prohibited under the State of South Carolina's Eleventh Amendment immunity; (3) the Court lacks subject matter jurisdiction over this matter pursuant to Rooker-Feldman; (4) the Complaint and relief sought violates the Constitution's separation of powers; (5) the Complaint fails to state causes of action for its substantive due process, EPSDT, or ADA claims; and (6) the

Complaint does not comply with federal pleading rules.  For these reasons, the Defendant, Susan Alford, respectfully requests that the Court grant her Motion to Dismiss the Plaintiffs' Complaint.

Respectfully submitted,

SOWELL GRAY STEPP & LAFFITTE, L.L.C.


By:  s/ Monteith P. Todd
         Rebecca Laffitte (ID No. 1036)
         rlaffitte@sowellgray.com
         Monteith P. Todd (ID No. 3125)
         mtodd@sowellgray.com
         J. Michael Montgomery (ID No. 10290)
         mmontgomery@sowellgray.com
         Alex E. Davis (ID No. 11323)
         adavis@sowellgray.com
         1310 Gadsden Street
         Post Office Box 11449
         Columbia, South Carolina 29211


Attorneys for Defendant, Susan Alford, in her official capacity as Acting State Director of the South Carolina Department of Social Services

Columbia, South Carolina

March 16, 2015