APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

    a.    **Section IV.C: Institutional Abuse or Neglect (OHAN) Investigations Implementation Plan**

**Requirement:** Defendants shall develop an Implementation Plan to implement the achievement of the final targets in this subsection. The Implementation Plan shall have enforceable interim benchmarks with specific timelines, subject to consent by the Plaintiffs and approval by the Co-monitors, to measure progress in achieving the final targets in this subsection.

**Final Settlement Agreement Targets IV.C: Investigations:**

C.2.    At least 95% of decisions not to investigate a Referral of Institutional Abuse or Neglect about a Class Member must be made in accordance with South Carolina law and DSS policy.

C.3.    At least 95% of decisions to "unfound" investigations of a Referral of Institutional Abuse or Neglect must be based upon DSS ruling out abuse or neglect or DSS determining that an investigation did not produce a preponderance of evidence that a Class Member was abused or neglected.

C.4(a).    The investigation of a Referral of Institutional Abuse or Neglect must be initiated within 24 hours in accordance with South Carolina law in at least 95% of the investigations.

C.4(b).    The investigation of a Referral of Institutional Abuse or Neglect must include face-to-face contact with the alleged victim within 24 hours in at least 95% of investigations, with exceptions for good faith efforts approved by the Co-Monitors.

C.4(c).    Contact with core witnesses must be made in at least 90% of the investigations of a Referral of Institutional Abuse or Neglect, with exceptions approved by the Co-Monitors. Core witnesses will vary from case to case and may or may not include the victim(s), Class Members, alleged perpetrators, reporter (if identified), identified eyewitness(es), other children in the placement, facility staff, treating professionals, and foster parents or caregivers as deemed to be relevant to the investigation.

C.4(d).    At least 60% of investigations of a Referral of Institutional Abuse or Neglect shall be completed within 45 days of initiation of an investigation, unless the DSS Director or DSS Director's designee authorizes an extension of no more than 15 days upon a showing of good cause. For the purposes of this section, an investigation is not completed if DSS determines the Report is unfounded because the deadline to complete the investigation has passed.

C.4(e).    At least 80% of investigations of a Referral Institutional Abuse or Neglect shall be completed within 60 days of initiation of the investigation, and all investigations not completed within 60 days shall have authorization of the DSS Director or DSS Director's

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

designee of an extension of no more than 30 days upon a showing of good cause. For the purpose of this section, an investigation is not completed if DSS determines the Report is unfounded because the deadline to complete the investigation has passed.

C.4(f).   At least 95% of all investigations of a Referral of Institutional Abuse or Neglect not completed within 60 days shall be completed within 90 days. For the purposes of this section, an investigation is not completed if DSS determines the Report is unfounded because the deadline to complete the investigation has passed.

**Definitions and Exceptions:**

1. Referral of Institutional Abuse or Neglect is defined in the Settlement Agreement to mean a Referral of Institutional Abuse or Neglect as defined in S.C. Code Ann. § 63-7-20(12) that DSS has accepted for investigation.

**Target C.2**

2. Made in accordance with South Carolina law and DSS policy

A decision not to investigate a referral of child abuse and neglect is made when the allegation does not meet the statutory definition of child abuse or neglect, as defined in Section 63-7-20 of the South Carolina Children's Code and the allegation is against a caregiver in a foster home, residential treatment facility or intermediate care facility as described in Section 63-7-1270 of the South Carolina Children's Code. (Category 4)

**Target C.3**

3. Decision to "unfound" investigations of a Referral of Institutional Abuse or Neglect

An investigation is unfounded when the information uncovered in a thorough investigation reveals that abuse did not occur (Category 1) or the investigation did not produce a preponderance of evidence (Category 2). Preponderance of evidence means that the abuse was more likely than not to have occurred. Cases maybe unfounded in rare instances when core witnesses cannot be located (Category 3). There is a fourth category of "unfounded" cases, those that the department decides not to investigate (screen-outs).

**Target C.4(a)**

4. Initiated within 24 hours in accordance with South Carolina law

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

The 24 hour initiation of an investigation case begins at the time of the report of abuse or neglect. DSS has 24 hours from the report to make face-to-face contact with the victim child.

**Target C.4(b)**

5. Good faith efforts

The following are good faith effort exceptions for the purpose of measuring compliance in individual investigations, approved by the Co-Monitors. In all instances, the exception must be supported by documentation that all applicable efforts were made to engage.

   a. Investigator attempted to see child(ren) at school
   b. Investigator attempted to see child(ren) at child care facility
   c. Investigator attempted to seechild(ren) at doctor's visit or hospital
   d. Investigator attempted to see child(ren) at therapist's office
   e. Investigator attempted to see child(ren) at the police department
   f. Investigator attempted to attend forensic/CAC interview
   g. Investigator attempted to contact the parent/guardian of the victim child(ren) if the child(ren) has gone home
   h. Investigator contacted the assigned foster care worker(s) and/or supervisor(s)
   i. For child(ren) moved to an out-of-state location in order to receive specialized treatment, investigator attempted to interview by Skype or other electronic means
   j. Investigator contacted and visited all foster placements where the child may be temporarily placed in the first 24 hours

The following are exceptions, approved by the Co-Monitors, for extraordinary circumstances which may excuse compliance in individual investigations. In all instances, the exceptions must be supported by documentation of the exclusion, and best efforts to engage:

- Child was returned to biological family prior to report and family refuses contact
- Child is deceased
- Facility restrictions due to child's medical requirements
- Child missing despite efforts to locate (efforts should include all applicable good faith efforts listed above)
- Natural disaster
- Law enforcement prohibited contact with child

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

**Target C.4(c)**

6. Core Witness Definition: An individual who is pertinent to the investigation because they witnessed or have knowledge of the alleged actions, and can shed light on the allegations and the actions of the alleged perpetrators. Core witnesses differ from investigation to investigation, but in all cases include: reporter(s), alleged perpetrator(s), alleged child victim(s), child's caseworker, other child(ren) or adult(s) in the home and, where applicable, law enforcement. If the allegations involve an institutional setting, all other adults and children relevant to the investigation are considered core witnesses.

The following are exceptions for the purpose of measuring compliance in individual investigations, approved by the Co-Monitors. In all instances, the exception must be supported by documentation of the exception reason, and best efforts to engage:

- Witness refused to cooperate
- Unable to locate or identify witness
- Witness is deceased
- Medical conditions prevented witness from cooperating
- Witness advised by counsel or law enforcement that interview could not occur (e.g. pending charges, lawsuit)

**Targets C.4(d), (e), and (f)**

7. The DSS Director or Director's Designee may authorize an extension of up to fifteen days beyond the 45-day completion requirement upon a showing of "good cause." "Good cause means" that, through no fault of the investigator, a sufficient reason exists for delaying a case decision, such as the expectation of receiving additional information within the extension period that is critical to make a sound case decision. "Good cause" extensions must be supported by documentation of the extension reason, and best efforts to obtain the necessary information within the 45-day timeframe. Examples include, but are not limited to the following:

- Awaiting critical collateral information (e.g. medical report, x-rays, toxicology, video)
- Critical new information was received from witness that requires follow up
- Awaiting forensic interview/findings
- Awaiting action by law enforcement
- Awaiting critical information from another jurisdiction (e.g. central registry check)
- Child has been too ill or traumatized to speak with investigator

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

8. Proposed Process for Obtaining Director or Director's Designee Approval:

The OHAN investigator will request an extension in writing to his/her supervisor with a detailed explanation of the good cause basis for the extension at least by the 42nd day. The supervisor will decide whether to support or deny the extension. If the supervisor supports the extension, he/she will submit the request to the Director of OHAN, as the SCDSS Director's designee, for approval or denial. The OHAN Director will either approve or deny the decision within 24 hours, and if approved, the OHAN supervisor must document the extension in CAPSS.

**Current Status of Data Related to these Targets and Proposed Methodology for Monitoring:**

While there are a number of reports related to OHAN investigations within the agency, some of the targets can only be baselined and monitored for compliance through a case-level review. To establish a baseline for Targets C.2 through C4 (a)-(f), Defendants have designed a case review process and have contracted this function to the University of South Carolina. DSS, with technical assistance, has developed and tested two QA instruments for these reviews. The reviews for intakes (Target C.2) have been completed and baselines and interim enforceable targets are set out below. The investigative baseline reviews (Targets C.4 a-f) have been completed and baselines and interim enforceable targets are set out below.

DSS proposes that all Targets be monitored for compliance through the continued case review process through samples of cases (to be agreed upon with the co-monitors) during a 6-month reporting period:

| Target | Number to Review | For the period 4/1/2016 to 9/30/2016: universe counts |
|---|---|---|
| 1. (C.2) At least 95% of decisions not to investigate | sample to be determined | 128 (screen outs) |
| 2. (C.3) At least 95% of decisions to "unfound" investigations | sample to be determined | 150 (investigations) |
| 3. Targets (C.4 a-f) | sample to be determined | 150 (investigations) |

However after modifications to CAPSS and to existing reports and training of CAPSS users, DSS proposes Targets C.4(a), C.4(b), C.4(d), C.4(e), and C.4(f) be monitored through the use of CAPSS reports, case reviews of all exceptions and extensions, and random case reviews of non-exceptions. Using timely initiation within twenty hours as an example, 11 cases were not initiated timely during the period of 4/1/2016 to 9/30/2016 (an example of an exception). Those 11 cases would be case reviewed while only a sample (yet to be determined) will be reviewed of the 136 cases

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

that were initiated timely.  Once reports are created, tested, and validated, DSS will send to the co-monitors for approval and thereafter, will send to the co-monitors at agreed upon intervals.

Baseline for Targets:

1. C.2: 44% of decisions not to investigate a Referral of Institutional Abuse or Neglect about a Class Member were made in accordance with South Carolina law DSS policy.

2. C.3: 47% of decisions to "unfound" investigations were based upon DSS ruling out abuse or neglect or determining that an investigation did not produce a preponderance of evidence

3. C.4 (a) __% of  investigations were initiated within 24 hours
Baseline was not calculated for Target C.4 (a).  Co-monitors interpreted the settlement agreement to be that initiation within 24 hours includes face-to-face contact.  A separate target is not necessary.

4. C.4 (b) 78% of investigations included face-to-face contact with alleged victim within 24 hours, with exceptions
Two measures were calculated at baseline.
   - C.4 (b.1) 78% of investigations included face-to-face contact made with each of the alleged child victims within 24 hours of receipt of call.  Co-monitors interpreted the settlement agreement that face-to-face contact to be made with each of the alleged child victims within 24 hours of receipt of call.
   - C.4 (b.2) 89% of investigations included face-to-face contact made with each of the alleged child victims within 24 hours of acceptance of the call. This measure was calculated for information purposes only.

5. C.4 (c) 27% of investigations made contact with core witnesses, with exceptions

6. C.4 (d) 95% of investigations were completed within 45 days, with exceptions
Baseline was not calculated for Targets C.4 (e) and C.4 (f).

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

| Interim Benchmark: | Timeline: |
|---|---|
| Develop case review processes with USC and complete case reviews of the universe for baseline | Baseline for OHAN intake and investigations completed July 2017. |
| Following baseline, USC will review ongoing samples to be determined from the universe for compliance for all targets (targets C.2, C.3, and C.4(a-f)). | Following baseline. Ongoing. |

Interim Benchmarks and Timeline:

The projected interim performance for OHAN targets is:

| C.2: Target 95% ||
|---|---|
| **Interim Benchmark:** | **Timeline:** |
| 75% | September 2017 |
| 90% | March 2018 |
| 95% | September 2018 |

| C.3: Target 95% | C.4.b: Target 95% | C.4.c: Target 90% | C.4.d Target 60% | C.4.e Target 80% | C.4.f Target 95% | Timeline |
|---|---|---|---|---|---|---|
| Interim Benchmark: | Interim Benchmark: | Interim Benchmark: | Interim Benchmark: | Interim Benchmark: | Interim Benchmark: | |

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

| | | | | | | |
|---|---|---|---|---|---|---|
| 48% | 78% | 35% | 75% | 80% | 95% | September 2017 |
| 50% | 80% | 40% | 75% | 80% | 95% | March 2018 |
| 55% | 80% | 45% | 75% | 80% | 95% | September 2018 |
| 60% | 85% | 55% | 80% | 80% | 95% | March 2019 |
| 65% | 85% | 60% | 80% | 80% | 95% | September 2019 |
| 75% | 90% | 70% | 90% | 90% | 95% | March 2020 |
| 85% | 90% | 80% | 90% | 90% | 95% | September 2020 |
| 95% | 95% | 90% | 95% | 95% | 95% | March 2021 |

**Strategies towards Achieving Targets:**

The Department identified a number of strategies to achieving the OHAN targets:

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

| Proposed Strategies to Achieve Targets: | Timeline: | Resources: | Responsible Party: | Evidence of Completion: |
|---|---|---|---|---|
| **Intake and Investigations:** | | | | |
| a. Institute investigative worker office day for case management activities | Complete by September 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | Outlook calendar |
| b. Develop a user-friendly report to track and monitor face-to-face contact and case initiation within 24 hours | To be determined after Data Workgroup prioritizes CAPSS and data work (See Core Foundational and Capacity Building Section Above – 3.b). Some development has already occurred. | Can complete with existing internal resources | Barbara Derrick<br><br>Brad Leake | Report outcomes |
| c. Revise the intake referral sheet to gather updated placement and caseworker information | Complete by March 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | Updated intake referral sheet |
| d. Revise existing checklist to expand core witness list | Complete by April 2017 | Can complete with internal resources | Taron Davis<br><br>Sandy Hart | Supervisory review of case file |

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

| Proposed Strategies to Achieve Targets: | Timeline: | Resources: | Responsible Party: | Evidence of Completion: |
|---|---|---|---|---|
| e. Develop tracking system for documenting core witness contacts and provide additional guidance and training to caseworkers on identifying core witnesses | Complete by December 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | CAPSS core witness report |
| f. Research and adopt a screening and assessment tool to help guide decision making for OHAN intake | Complete by May 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | Revised screening and assessment tool |
| g. Develop and conduct specialized OHAN training to include findings from OHAN baseline reviews (including clarifying practice standards around "collateral" contact prior to making a hotline decision), CAPSS documentation training, interview and investigative techniques, restraint training, assessing for safety and risk, and critical decision making | OHAN basic intake training to occur for existing workers and supervisors beginning September 2017.  OHAN basic investigative training to occur for existing workers and supervisors by December 2017.  All new workers and supervisors will be required to complete training going forward | Internal resources and USC Training Staff | Taron Davis<br><br>Barbara Derrick | Training materials |
| h. Develop a Provider History report in CAPSS to provide an easy to access and consistent history on providers for use by OHAN | Work has begun.  Preliminary report has been created and is being pretested with staff, supervisors, and reviewers. Based on feedback, report | Can complete with existing internal resources | Barbara Derrick<br><br>Brad Leake<br><br>Taron Davis | Provider History Report |

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

| Proposed Strategies to Achieve Targets: | Timeline: | Resources: | Responsible Party: | Evidence of Completion: |
|---|---|---|---|---|
| workers, supervisors, and reviewers<br><br>- Preliminary report is currently being tested<br>- Once finalized, report will be automated in CAPSS.<br>- OHAN intake Workers will be trained to access, read, and summarize the previous allegations for the past 2 years and consider the previous history as a factor in determining preponderance of evidence for case | will be finalized and automated in CAPSS. Until automation, adhoc reports will continue to be extracted. Work complete by September 2017. | | | |
| i. Develop a coordinated process with Licensing that may include the following:<br><br>- Create a new policy to establish clear guidelines for revocation of foster home and facility licenses for multiple allegations of policy violations that do not constitute abuse or neglect but that are detrimental to child well-being | Development of policies to be completed by July 2017. Implementation of policies and training of existing staff on new policies completed by November 2017 by Licensing (Jackie Lowe) and OHAN (Louise Cooper) | Can be complete with existing resources | Taron Davis<br><br>USC Training Team | Policy Completion<br><br>Training Materials |

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

| Proposed Strategies to Achieve Targets: | Timeline: | Resources: | Responsible Party: | Evidence of Completion: |
|---|---|---|---|---|
|  |  |  |  |  |
| **Supervisor Review:** |  |  |  |  |
| a. Determine ways to increase guided supervision staffing, critical thinking, monitoring-accountability system by supervisor |  |  |  | Identification of ways |
| - Revise the Guided Supervision Tool to be specific to OHAN performance measures and for case reviews and system for utilization in practice. After implementation, this tool will be used at every supervisory review to guide the critical thinking of staff in investigatory work. | Complete by May 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | Revised Guided Supervision Tool |
| - Train OHAN Supervisors on use of the Guided Supervision tool (See above for additional training of supervisors on information from OHAN baseline reviews) | Complete by June 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | Training materials |
| - Implement Guided Supervision in OHAN by training staff on the expectations and begin use | Complete by June 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | Explanation new/revised Guided Supervision process |

APPROVED OHAN IMPLEMENTATIONPLAN
8 9 2017

| Proposed Strategies to Achieve Targets: | Timeline: | Resources: | Responsible Party: | Evidence of Completion: |
|---|---|---|---|---|
| of the Guided Supervision process | | | | |
| | | | | |
| b. Implement standardized supervisory case review prior to case decision | Complete by April 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | CAPSS dictation that supervisory staffing is complete |
| c. Refine case closure supervisory review to include CAPSS and paper file (thorough review) | Complete by April 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | Production of new supervisory review tool |
| d. Develop methodology for caseload distribution | Complete by September 2017 | Can complete with existing internal resources | Taron Davis<br><br>Sandy Hart | |