# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Michelle H., by her next friend, Tamara Coppinger *et al.*, | ) <br> ) <br> ) |
| Plaintiffs, | ) C.A. No. 2:15-0134-RMG <br> ) |
| vs. | ) <br> ) |
| Henry Dargan McMaster, in his official capacity as Governor of South Carolina, and Michael Leach, as State Director of the South Carolina Department of Social Services, | ) <br> ) <br> ) <br> ) <br> ) **ORDER** <br> ) |
| Defendants. | ) <br> ) <br> ) |

This matter comes before the Court for approval of a modification of the Settlement Agreement reached by the parties following a mediation of July 8, 2020 conducted by retired South Carolina Chief Justice Jean H. Toal (hereafter referred to as the "Mediation Agreement"). (Dkt. No. 201). As explained below, the Court hereby approves the Mediation Agreement.

By way of background, the parties entered into a Settlement Agreement in 2016 which provided for comprehensive reform of the Department of Social Services' (DSS) Foster Care Program to provide essential resources and policies to promote the safety and welfare of the class of South Carolina's foster children. (Dkt. No. 32-1). The Settlement Agreement set certain benchmarks and provided for follow up Implementation Plans to address each aspect of the settlement, which were carefully developed and negotiated by the parties over the ensuing several years. The parties, which include here the Governor of South Carolina and the Director of DSS in their official capacities, petitioned the Court to approve each of the proposed Implementation Plans, which was granted. (Dkt. Nos. 109, 115, 116, 117, 118, 119, 120).

2

Thereafter, the parties submitted to the Court a Joint Report on July 22, 2019 identifying that certain aspects of these Implementation Plans were required to be implemented on or before July 1, 2020. (Dkt. No. 145). The Court adopted the parties' Joint Report and entered an order on August 15, 2019 setting forth the parties' legal obligations effective July 1, 2020. (Dkt No. 152).

The Settlement Agreement required the provision of significant new staff and resources to DSS beginning July 1, 2020. In compliance with that legal obligation, the Governor included in his Executive Budget multiple provisions mandated by the Settlement Agreement and Court-approved Implementation Plans. The Settlement Agreement makes clear that while the State Defendants pledge to "make all reasonable efforts to provide funding and other resources necessary to the implementation and achievement of the obligations under the Settlement Agreement," the failure of Defendants "to provide such adequate funding and resources shall not excuse and shall not limit remedies to address the failure to implement or achieve any of the obligations set forth in the Settlement Agreement." (Dkt. No. 32-1 at 3). The Settlement Agreement further recognizes that the obligations of the State Defendants "shall apply with full force and effect to the State of South Carolina . . ." (*Id.*) This provision reflects the well-settled rule that the Governor of South Carolina is vested with "supreme executive authority" under the South Carolina Constitution and that state officers, acting within their official authority and capacity, can bind the State contractually. South Carolina Constitution, Art. 4, § 1; *White v. Blue Cross-Blue Shield of South Carolina*, 229 S.E. 2d 854 (S.C. 1976). *See also King v. Walters*, 190 F.3d 784, 788-79 (7th Cir. 1999).

While the parties were poised to take the critical steps required by the Settlement Agreement on July 1, 2020, a once-in-a-century pandemic struck the State with tremendous force, closing public schools and businesses and disrupting the budgetary and financial

operations of the State. This significant and wholly unexpected development confronted the parties with a complicated dilemma. On one hand, the COVID-19 pandemic plainly exacerbated the adverse impact of the deficiently resourced Foster Care Program, making the mandated reforms more critical than ever. On the hand, prudence and pragmaticism suggested that the parties should employ some flexibility to accommodate for these unanticipated and confounding developments. In an effort to confront these challenges, the parties returned to mediation on July 8, 2020, looking in good faith for a common path.

To the credit of the parties and their mediator, the Court is now presented with proposed modifications to the Settlement Agreement and Implementation Plans that will spread out some of the State Defendants' obligations out over the next two fiscal years, 2020-21 and 2021-22. In recognition of the exacerbation of certain burdens on the Plaintiff Class by the pandemic, the parties have agreed to the immediate implementation of certain actions to mitigate against these adverse effects. The Court has reviewed each aspect of this July 8, 2020 Mediation Agreement and approves it, as presented, as the Order of the Court. (Dkt. No. 201).

The Mediation Agreement mandates a number of critical actions necessary to be taken in this fiscal year as soon as practicable. These include:

1.  <u>Increases in the foster care maintenance payments to all foster parents</u>: DSS has pledged to implement the increase in foster parent payments in accord with a previously adopted schedule effective July 1, 2020. This is a critical element of the Settlement Agreement, to place foster children in the more desirable and cost-effective family setting and to move them away from the excessively expensive and often challenging congregate care setting. (*Id.* at 1-2). The spread of the COVID-19 virus has made this move even more critical to expand the pool of

available foster homes by providing payments that more closely reflect the cost of raising a child in South Carolina.

  2. <u>Increase the DSS staff to serve the anticipated 400 new foster children projected to enter the foster care program once the public schools reopen</u>:  A critical element of the Settlement Agreement was the recognition that the Foster Care Program was woefully understaffed and produced crushing caseloads for the case workers, which caused tremendous staff turnover that destabilized the program and made any reform essentially impossible.  This problem will be undoubtedly exacerbated by the pandemic, which has produced a tremendous drop in child abuse reports, which most commonly are made by public school personnel.  DSS estimates that it will have a sudden rush of approximately 400 new foster children once the schools reopen, which would represent a 10% increase in clients for the already overtaxed staff.  The parties have agreed to create new staff positions to serve this anticipated pool of new foster children.  (*Id*. at 11-12).

  3. <u>Implement a portion of the Settlement Agreement obligation to increase Foster Care Program staff on July 1, 2020</u>:  The obligations of the Settlement Agreement cannot be accomplished until the caseloads are reduced and the case workers have the time to provide critically needed, well planned services to the children under their supervision.  The Settlement Agreement and Implementation Plans provided that a major step in this direction was to be taken July 1, 2020, and the Governor's Executive Budget recommended full funding of these positions.  The parties agreed at mediation to spread out these obligations over the next two years. (*Id*. at 18-19).  The Court finds that 40% of these staff members must be hired, trained and placed in service during the 2020-21 fiscal year and the remainder in the 2021-22 fiscal year.

2

4. <u>Implement a portion of the Settlement Agreement obligation to adopt a new salary schedule that will make the caseworkers' salaries more competitive with other similarly educated and trained public workers</u>:   It has been well established in the course of this litigation that a major contributing factor to the enormous staff turnover in the Foster Care Program (approximately one third of the staff each year and 40% of the new hires) is the inadequate compensation provided to case workers when compared with other similarly trained and educated public workers.  The parties have adopted, after a careful independently produced study by a consultant, a new salary schedule set for implementation July 1, 2020.  The parties have agreed in the Mediation Agreement to spread out the implementation of the new salary schedule over the 2020-21 and 2021-22 fiscal years. (*Id*. at 19-20).   The South Carolina House of Representatives approved funds for approximately 20% of the cost of the new salary plan for fiscal year 2020-21.  In light of the present circumstances, the Court finds that the balance of the Defendants' obligations under the Settlement Agreement can be performed in the 2021-22 fiscal year.

5. <u>Provide for services necessitated by the movement of foster children from congregate care to family placements</u>:   DSS's effort to move foster children out of congregate care settings and into family placements will require support services for the new foster families.  The pandemic has obviously accelerated the need for these critical support services.  The Mediation Plan provides for the provision of these services in the 2020-21 fiscal year.  (*Id*. at 12-13).

6. <u>Provide for critical services in local communities to reduce the number of out-of-county placements</u>:   Some of the congregate care placements and out-of-county placements are due to the lack of needed services in some communities.  In an effort to place more foster

2

children in their home communities in family style settings, DSS intends to provide critical services in some under-resourced communities. This is another area where the pandemic has accelerated the need for such services. The Mediation Agreement provides for the provision of these needed services during the 2020-21 fiscal year. (*Id*. at 14-15).

       7.      <u>Increase Healthcare Plan staffing with additional nurses and administrative personnel</u>: One of the more ambitious and imaginative aspects of the Settlement Agreement has been the adoption of a Healthcare Plan, in collaboration with other state agencies, that provides medical, dental, eye and mental health services to foster children in a systematic and coordinated fashion. An essential ingredient for the success of the program is adequate staffing of the Healthcare Plan. DSS has recognized that its present staff is insufficient and needs an efficiently functioning Healthcare Plan in the midst of the pandemic. The Mediation Agreement provides for the implementation of this provision in the 2020-21 fiscal year. (*Id*. at 17-18).

       8.      <u>Defray expenses for new kin foster families</u>: DSS has launched an intensive effort to expand the number of kin foster families, a critical part of the agency's strategy to expand the pool of licensed foster families. The new foster families often must incur expenses to meet requirements for licensure, and DSS has proposed a program to assist with these expenses as a means of removing obstacles to the expeditious expansion of the pool of qualified foster families. This is another need accelerated by the pandemic. The Mediation Agreement provides for the implementation of this program in the 2020-21 fiscal year. (Dkt. No. 201 at 15-16).

      The Court commends the parties for working collaboratively in making some reasonable modifications in the obligations of the State Defendants due July 1, 2020. It is now time for the State Defendants to fulfill their contractual obligations under the Settlement Agreement. The

parties are directed to maintain regular status reports to the Court regarding its compliance with this Order.

    **AND IT IS SO ORDERED.**

s/ Richard Mark Gergel<br>Richard Mark Gergel<br>United States District Judge

July 23, 2020
Charleston, South Carolina