

January 13, 2025

**<u>Via ECF Filing</u>**
The Honorable Richard M. Gergel
U.S. District Judge
P.O. Box 835
Charleston, SC 29402

**Re:**   *Michelle H., et al. v. McMaster and Catone*, C/A No. 2:15-cv-00134-RMG
         Plaintiffs' Concerns for the Proposed Richland Plan

Dear Judge Gergel:

Pursuant to this Court's Order of January 3, 2025 (ECF No. 340), Plaintiffs respectfully submit this response to Defendants' submission, titled *Richland County DSS Child Welfare Improvement Plan* (the proposed "Richland Plan," ECF No. 339), under this Court's Order of October 18, 2024 (ECF No. 331).

Plaintiffs appreciate the opportunity to provide comments, as well as Defendants' efforts in convening the Task Force and submitting the proposed Richland Plan. While the Richland Plan includes some good initiatives intended to alleviate the placement crisis in Richland County DSS and the ongoing harms to the Plaintiff Class, Plaintiffs believe the Richland Plan is deficient and does not sufficiently reflect the urgency of the crisis in several respects.

Plaintiffs strongly believe the Richland Plan should reflect the "whatever it takes" approach that representatives of DSS, the Governor's Office, Plaintiffs, and the Co-Monitors all agreed to at the last hearing is necessary. Plaintiffs also note that the Co-Monitors are playing and should continue to play a critical role in both the identification of needed strategies and action steps to address the crisis and in the monitoring of their implementation.

Plaintiffs' concerns with the proposed Richland Plan include the following:

1. **Ending in-county *and* out-of-county night-to-night and emergency placements**
   - The Richland Plan should end the current practice of both *in-county and* out-of-county night-to-night and emergency placements by June 30, 2025. The Court and the Parties were clear at the last status conference that the current "incentive" structure of payments for stays for 12 hours or fewer in-county (even with the recently added basic requirements of a shower, a meal, and medication provision) is inappropriate and harmful, and is also diverting resources that could be used, for example, to expand therapeutic foster care (TFC) or other family-based providers and supports to care for Class Members in Richland County.

1

2. **Expanding therapeutic and specialized foster care and mobile crisis services**
   - The commitment to meet regularly with provider partners to increase short- and long-term resources (Richland Plan at 4) is an important strategy, but should explicitly include a point person and a plan by June 30, 2025 (with the flexibility to adapt the plan further going forward), to respond to the "whatever it takes approach" as it relates to engaging providers. This provider plan should fund and expand placement and service options for youth with higher needs, including expanding the number and capacity of TFC providers, other specialized foster family placements, and the availability of and access to mobile crisis response services.

3. **Expanding mental health and behavioral services**
   - The Richland Plan should also include the development of a plan now for the expansion of mental health and behavioral health services. This would help prevent unnecessary removal of children into DSS custody in Richland County and provide the services to meet the needs of Class Members in Richland County in their communities. This complementary plan should be overseen and subject to the approval of the Co-Monitors and include short-, medium-, and long-term strategies and action steps. While Plaintiffs recognize the crisis-amelioration nature of the Richland Plan, the expansion of the network of mental health and behavioral health providers and services (including intensive, in-home services) is a necessary part of sustainable solutions that can be scaled statewide.
   - Importantly, expanding the community-based mental health service capacity now is necessary to ensure that ending the current crisis in RCDSS is not replaced by other inappropriate and harmful placement practices, e.g., the use of hotels or motels, a return to the unnecessary use of congregate care, the overcrowding of hospital emergency rooms, or the diversion of youth to juvenile justice placements.

4. **Providing supports for foster parents and kin families**
   - Creating a "model" of supports for all foster parents does not appear sufficiently actionable (Richland Plan at 6), and July 15, 2025 is too far out to have an urgent and effective impact. Flexible funds should immediately be made available to provide this support *now* so youth do not require office or emergency night-to-night or short-term placements. A clear array and use of available supports should be completed by March 30, 2025, and updated on an ongoing basis.
   - The Richland Plan should also specify that funds can be used immediately to incentivize longer-term, family-based placements (e.g., including unlicensed kin until the streamlined kin approval and equal payment structure is actually in place). The Richland Plan should also include special outreach to current and potential kin families so that they are aware of this resource and kin support providers are engaged immediately, to better assist families. (Richland Plan at 6)

5. **Including specific and expanded pre-removal strategies**
   - The Richland Plan, in addition to requiring full adherence with fidelity to DSS Policy for all required child and family team meetings (CFTMs), should include rapid expansion of the "pre-removal CFTMs" that DSS has championed in Court. The Richland Plan does not include the "pre-removal CFTMs" at all. The Parties and Co-Monitors have agreed several times on the record over the past 18 months that this needs to be part of the solution, especially given its effectiveness when it was piloted. Plaintiffs note that the pre-removal CFTMs are needed *in addition* to needed immediate DSS engagement with law enforcement to avoid unnecessary EPCs (discussed directly below). The "pre-removal" CFTMs appear targeted *after* 24-hour emergency removal and *before* the 72-hour hearing.

6. **Including more specific and actionable engagement with law enforcement**
   - The strategy listed as "[c]reate accountable relationships and enhance communication and partnership with local law enforcement and the Department of Juvenile Justice (DJJ)" does not appear sufficiently specific to be actionable. (Richland Plan at 11) This strategy should include the recruitment (if needed) and immediate deployment of designated DSS foster care staff to permit DSS to respond to law enforcement *immediately* when removal is being considered in the first 24 hours after a report is made, to maximize stopping unnecessary EPCs (with flexible resources available to support youth in families or with kin with needed services).

7. **Including more specific educational supports**
   - When identifying educational advocates to help promote the educational rights of foster children, this step should include entering into a contract with SC Legal Services to secure legal representation for Class Members when needed. (Richland Plan at 12)
   - When establishing recurring meetings between Richland DSS and county schools, this strategy and its actions steps should include appropriately-trained DSS staff deployed on-site at schools to provide alternatives to unnecessary reports and investigations, such that teachers and staff connect with DSS *first*. (Richland Plan at 13)

8. **Including immediate on-site mental health supports at the RCDSS Office**
   - The Richland Plan should specify that DSS will immediately employ and maintain on-site, 24/7, a sufficient number of qualified mental health professionals at the RCDSS office to address and coordinate any ongoing or emerging mental health needs of Class Members. The Plan should also specifically require DSS to maintain the service and staffing capacity to provide any off-site, acute treatment necessary for youth that require such services. (Richland Plan at 17)

9. **Including immediate presence of trauma-informed staff at the RCDSS Office**
   - The Richland Plan should specify that any increase in law enforcement's presence (Richland Plan at 17) shall be made without creating a carceral environment at the RCDSS office (for youth and for others entering the RCDSS office) and shall occur with the immediate presence of 24/7, on-site staff that are trained in applicable, trauma-informed de-escalation strategies.
   - The Plan should identify and provide such staff by January 31, 2025, so that the youth still subject to these inappropriate, in-office placements have this support. Adding further trained staff in July 2025 *after* DSS is committing to stop housing children at the RCDSS office, according to Goal 1 in the Richland Plan, is ineffective. (Richland Plan at 4, 18)

10. **Ending excessive late-night work hours**
    - The Richland Plan should specifically phase out, with interim targets, excessive late-night work shifts and hours of Richland County DSS staff by June 30, 2025. The proposed Plan does not state any end date for this practice. (Richland Plan at 14-15).

    Plaintiffs appreciate the opportunity to provide these comments. Much has been achieved under the *Michelle H.* consent decree and its necessary modifications. A sufficiently urgent and actionable Richland Plan will address the crisis, allow DSS to scale successful strategies, and move the Parties toward full compliance and exit from monitoring.

Most Respectfully,

s/ Matthew Richardson

Matthew T. Richardson (ID No. 7791)
WYCHE, P.A.
807 Gervais Street, Suite 301
Columbia, SC 29201
Telephone: (803) 254-6542
Facsimile: (803) 254-6544
mrichardson@wyche.com

Susan B. Berkowitz (ID No. 1305)
Adam Protheroe (ID No. 11033)
SOUTH CAROLINA APPLESEED LEGAL
JUSTICE CENTER
1518 Washington Street
Columbia, SC 29201
Telephone: (803) 779-1113
Facsimile: (803) 779-5951
sberk@scjustice.org
adam@scjustice.org

Ira Lustbader (*Admitted Pro Hac Vice*)
Valerie Achille (*Admitted Pro Hac Vice*)
CHILDREN'S RIGHTS
88 Pine Street, Suite 800
New York, NY 10005
Telephone: (212) 683-2210
Facsimile: (212) 683-4015
ilustbader@childrensrighs.org
vachille@childrensrights.org

Attorneys for Plaintiffs